# 𝕌nited 𝕊tates 𝔻istrict ℭourt

## for the 𝔑orthern 𝔇istrict of ®klahoma

---

Case No. 25-cv-633-JDR-SH

---

C.J., *a minor, by and through her parent and next friend,* CANDACE FRALIX; CANDACE FRALIX, *in her individual capacity,*

*Plaintiffs,*

*versus*

INDEPENDENT SCHOOL DISTRICT NO. 1 OF TULSA COUNTY, OKLAHOMA, *doing business as* TULSA PUBLIC SCHOOLS; RONDA KESLER, *in her individual capacity*; CURTIS SWINFORD, *in his individual capacity*; KELLY CATES, *in her individual capacity,*

*Defendants.*

---

## OPINION AND ORDER

---

Plaintiffs C.J. and Candace Fralix allege that Defendants Tulsa Public Schools, McClure Elementary School Principal Ronda Kesler, McClure Elementary School Dean Curtis Swinford, and McClure Elementary School Assistant Principal Kelly Cates collectively violated C.J.'s and Ms. Fralix's constitutional rights and Title IX protections when they failed to address sexual harassment by another student at McClure Elementary School. Dkt. 2.[1] All Defendants have moved to dismiss Ms. Fralix's complaint for failure to state a claim. Dkts. 22, 23. The Court grants TPS's motion to dismiss [Dkt. 22] Plaintiffs' claims for violations of 42 U.S.C. § 1983, equal protection, and

---

[1] All citations use CM/ECF pagination. Ms. Fralix's complaint occasionally refers to Dean Swinford as "Assistant Principal Curtis Swinford" and Assistant Principal Cates as "Dean Kelly Cates." *See, e.g.,* Dkt. 2 at 5. The difference between these titles is immaterial and the Court will default to the version of their titles given in the first instance. Dkt. 2 at 3.

No. 25-cv-633

denial-of-access, but the Court denies its motion to dismiss C.J.'s Title IX claim. The Court also grants the individual defendants' motion to dismiss in its entirety. Dkt. 23. Separately, Ms. Fralix has moved for leave to file an amended complaint and has provided the Court with additional context and information as part of her proposed first amended complaint. Dkt. 30. Since the proposed amended complaint contains many of the same causes of action as in the original complaint and would be subject to dismissal for futility, the Court denies her leave to amend. But as the Court recognizes that Ms. Fralix did not have the benefit of the Court's decision on the motions to dismiss, the Court will grant her leave to amend her complaint by July 2, 2026.

## I

To survive a motion to dismiss, Ms. Fralix's complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins*, 519 F.3d at 1247. In other words, the Court must determine whether, taking all well-pleaded allegations as true, the complaint provides a "reason to believe that [Ms. Fralix] has a reasonable likelihood of mustering factual support for [her] claims." *Ridge at Red Hawk, L.L.C. v. Schnieder*, 493 F.3d 1174, 1177 (10th Cir. 2007).

## II[2]

Ms. Fralix enrolled her eight-year-old daughter C.J. at TPS's McClure Elementary School in early 2025. Shortly thereafter, an unnamed male student began directing sexual comments towards her daughter. Dkt. 2 at 4. Ms. Fralix informed unidentified TPS administrators of these events, but TPS took no action. *Id.* The unnamed boy's conduct escalated, and he made further "sexual and threating comments toward C.J. in the presence of

---

[2] The following section summarizes the allegations as they are set forth in Ms. Fralix's complaint [Dkt. 2]. The Court accepts these facts as true solely for purposes of this order. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010).

2

No. 25-cv-633

[unidentified TPS] staff." *Id.* After Ms. Fralix informed TPS staff, an unidentified TPS teacher "decided it would benefit both students to work together so [C.J.] could help the boy with math assignments." *Id.*

Shortly thereafter, the same boy circulated a drawing "of C.J.'s dead body, showing a knife, a gun, and a bullet, with the word 'kill' written beside her name." *Id.* After confiscating it, C.J.'s teacher informed Ms. Fralix, Ms. Kesler, and unnamed "other administrators" of the drawing. *Id.* at 5. That teacher claimed she was unaware of the prior harassment allegations against the boy. *Id.*

Ms. Kesler, Ms. Cates, and Mr. Swinford opened an investigation into the boy's drawing approximately three weeks after it was confiscated. *Id.* This investigation only considered the drawing, but not the prior sexual harassment. *Id.* Relying on TPS policies, the individual Defendants determined there was no evidence of bullying and did not inform either TPS's Title IX Coordinator or TPS's Investigations Lead about the incident. *Id.* Rather than separating the boy from C.J. or disciplining him in any way, the individual Defendants referred him to counseling. *Id.* Ms. Fralix attempted to initiate a criminal investigation through Tulsa Police Department, but that department referred her to TPS Campus Police. *Id.* TPS Campus Police took her written statement but declined to forward it for criminal review or assist Ms. Fralix in seeking a protective order. *Id.* at 5-6.

In response, Ms. Fralix elected to remove C.J. from McClure Elementary School. *Id.* at 6. This "required round-the-clock caregiving, derail[ing] [Ms. Fralix's] job search," and C.J. lost significant educational time due to a lack of assurances from TPS that C.J. would be provided a "safe alternative" learning environment. *Id.*

Ms. Fralix, acting on her on behalf and in her capacity as C.J.'s next friend, alleges that TPS's actions violate Title IX, that TPS and the three individual administrator defendants deprived C.J. of her educational rights

3

No. 25-cv-633

under 42 U.S.C. § 1983, and that TPS denied C.J. access to courts and procedural due process. *Id.* at 6-12. TPS moves to dismiss these claims, arguing that Ms. Fralix has not stated a claim under Title IX, not stated a claim under § 1983, not stated a claim that her individual rights were violated, and failed to state a claim for declaratory and injunctive relief. Dkt. 22. The individual Defendants also move to dismiss and argue that Ms. Fralix has not stated a claim against them under § 1983. Dkt. 23.

## III

TPS argues that Ms. Fralix has not stated a claim under Title IX because (a) the acts of bullying of which she complained were not sexual, (b) she did not plead a plausible claim of sexual harassment, (c) the complaint does not establish that TPS had knowledge of any sexual harassment, (d) the complaint does not establish that TPS was deliberately indifferent to any sexual harassment, and (e) the complaint does not evince a causal link between TPS's actions and the harm C.J. allegedly suffered. Dkt. 22. The Court will address each argument in turn.

## A

TPS first claims that the male student's death threat is not sexual bullying for which Ms. Fralix can recover under Title IX because it only depicted her dead body and had no inherently sexual content. Dkt. 22 at 13. But this argument mischaracterizes Ms. Fralix's complaint. Ms. Fralix does not argue that the drawing, on its own, is sexual in nature. Rather, she argues that the drawing and threat of violence—from the same boy who had previously sexually harassed C.J.—was part of that boy's ongoing sexual harassment even though on its own it had no sexual content. Dkt. 2 at 4-6.

TPS relies on three cases to support its argument, but not one is availing. TPS first cites *Seamons v. Snow*, 84 F.3d 1226, 1230 (10th Cir. 1996), a case where the Tenth Circuit held that statements by school officials such as "boys will be boys" and "take it like a man" about hazing by members of a

4

No. 25-cv-633

high school football team were insufficiently "sexually charged" to be "cognizable as sexual harassment."[3] But Ms. Fralix's allegations are not comparable to the district official's comments in *Seamons*. Ms. Fralix alleges that the comments "used [C.J.'s sex] to contribute to a hostile environment for her" and included explicit references to C.J.'s "private parts." Dkt. 2 at 4. That makes them directly unlike the comments in *Seamons* that the Tenth Circuit characterized as "promoting[] team loyalty and toughness." *Seamons*, 84 F.3d at 1233. Taken in context, the male student's later death threat, unlike the comments in *Seamons*, continued his ongoing sexual harassment of C.J. by a not-inherently-sexual means. *Seamons* thus has no bearing on this case.

Second, TPS cites *Whitley v. Indep. Sch. Dist. No. 10 of Dewey Cnty., Oklahoma*, No. CIV-18-331-SLP, 2019 WL 7667329, at *6 (W.D. Okla. Apr. 22, 2019), a Title IX case where the court granted summary judgment to a defendant school district. TPS argues that *Whitley* is applicable to this suit because it held that any alleged harassment must "be more than mere name-calling," and contends that the actions of the unidentified male student were nonsexual verbal harassment for which Ms. Fralix cannot recover. Dkt. 22 at 14. *Whitley* involved six separate allegations of sexual harassment. At the summary judgment stage, the court determined the evidence was insufficient to support the plaintiff's claims. 2019 WL 7667329, at *5-10. *Whitley*'s application to this suit has two problems. First, it applied a summary judgment

---

[3] TPS makes much of the one-paragraph concurrence in *Seamons*, which found that statements from school district employees "clearly relate[] to and flow[] out of the original sexual harassment" and "may be considered to be a continuation by the school official of the student-initiated sexual harassment." 84 F.3d at 1240. But for "other reasons" not explained in the concurrence, the authoring judge concurred in the result. *Id.* TPS's reliance on this concurrence poses a problem because they seem to argue that there was a "nexus" between a student-on-student sexual assault and a separate school official's later comments, but no "nexus" between multiple alleged instances of sexual harassment and a later death threat from the same perpetrator. Dkt. 28 at 4. In any event, the Court is not persuaded that a concurrence that does not explain what "other reasons" exist that could preclude district liability for a district employee's "continuation . . . of student-initiated sexual harassment" has any bearing on this case. *Seamons*, 84 F.3d at 1240.

No. 25-cv-633

standard, which is more stringent than what the Court must apply to this motion under *Twombly*. Second, although the court held that the statements alleged in that case did not evince hostility to the plaintiff's gender, it was not considering the use of sexual taunts and a death threat by a male student against an eight-year-old girl. *Id.* The Court thus does not see *Whitley* as applicable to this motion.

Third, TPS cites *Higgins v. Saavedra*, No. CIV 17-0234 RB/LF, 2018 WL 327241, at *7 (D.N.M. Jan. 8, 2018). Dkt. 22 at 14. In *Higgins*, the court dismissed a student's Title IX claim for peer sexual harassment when, although the Court found that she had suffered sexual harassment on one instance on the part of her cheerleading teammates, later harassment from both those teammates and others was mere "name-calling, standing alone" and not "sufficient to demonstrate gender-based harassment." 2018 WL 327241, at *7. The court observed that there was little evidence that the student suffered the later harassment because of her sex and instead favored her alternative theory that it was retaliation for reporting the incident. *Id.* at *8. But *Higgins* was dealing with a fundamentally different set of facts. In *Higgins*, there was a single instance of sexual harassment followed by a pattern of nonsexual retaliatory harassment. *Id.* Here, Ms. Fralix did not allege that the male student was aware of her and C.J.'s reports of his behavior and, moreover, the alleged pattern is one of multiple instances of explicitly sexual harassment followed by a single instance of a nonsexual death threat. Dkt. 2 at 4-5. *Higgins* is the reverse of this case and therefore inapposite.

None of the cases cited by TPS address whether a later nonsexual threat can be part of a longer, ongoing campaign of sexual harassment. Although the Tenth Circuit has not squarely addressed the issue, other courts have held that nonsexual threats may contribute to a pattern of sexual harassment. *See Wadsworth v. Nguyen*, 129 F.4th 38, 59 (1st Cir. 2025) (stating that a pattern of "conduct that includes threats, sexualized comments, and sexually charged nicknames can rise to the level of sexual harassment"); *Kaytor*

No. 25-cv-633

*v. Elec. Boat Corp.*, 609 F.3d 537, 547–48 (2d Cir. 2010) (holding that "[c]ir-cumstantial evidence that facially sex-neutral incidents were part of a pattern of discrimination on the basis of gender may consist of evidence that the same individual engaged in multiple acts of harassment, some overtly sexual and some not" (quotation marks omitted)); *Gray v. Genlyte Grp., Inc.*, 289 F.3d 128, 135 (1st Cir. 2002) (stating that "acts of intimidation could comprise part of a pattern of sexual harassment, even though standing alone such acts might have no sexual connotation."). The Court agrees.

Although the male student's drawing was not necessarily sexual in content, he had previously "direct[ed] sexual comments toward C.J.," "men-tion[ed] her private parts," and "made sexual and threatening comments" on multiple occasions. Dkt. 2 at 4. When viewed in context of these earlier state-ments to or concerning C.J., a threatening drawing could be construed as part of his ongoing pattern of harassment based on C.J.'s sex. The Court will not dismiss a claim for student-on-student sexual harassment solely because the final act in a string of harassing actions was not inherently sexual in nature.

B

Second, TPS argues that Ms. Fralix's allegations that the unidentified male student made "sexualized taunts," "sexual comments . . . mentioning [C.J.'s] private parts," and "sexual references" are "conclusory" and there-fore not well-pleaded factual allegations. Dkt. 22 at 14-15. TPS claims that Ms. Fralix needed to specifically plead "what the sexual comments were, when and how frequently they were made . . . or any description of the cir-cumstances or context that might plausibly assert a claim of sexual harass-ment." *Id.* at 15.

Under the standard in *Twombly*, Ms. Fralix must plead facts sufficient to lay out a plausible claim for relief. 550 U.S. at 570. But *Twombly* does not require a plaintiff to plead every fact with particularity to meet the plausibility standard. *Id.* ("[W]e do not require heightened fact pleading of specifics").

No. 25-cv-633

Ms. Fralix has identified the perpetrator of the harassment, the timeframe, and has generally identified the content of that harassment. Dkt. 2 at 4. Requiring her to plead the specific words and phrases used by the perpetrator would be to "require [the] heightened fact pleading of specifics" rejected by *Twombly*. 550 U.S. at 570.

If Ms. Fralix had simply pleaded that the boy sexually harassed C.J. without providing any additional facts or indication of how or when, *Twombly*'s application to this case might not be the same. But Ms. Fralix provided a timeline of various independent actions by the harassing student and alleged that those actions included "sexual" content.[4] Dkt. 2 at 4. *Twombly* does not require more. Ms. Fralix has pleaded sufficient allegations of sexual harassment to state a plausible claim for relief. The appropriate place to challenge Ms. Fralix's interpretation of the content of the comments is at summary judgment or trial, not here.

## C

Third, TPS argues that Ms. Fralix has not alleged that TPS had actual knowledge of the sexual harassment. It argues that Ms. Fralix has failed to assert precisely which TPS employees were told about the boy's ongoing sexual harassment before the death threat was distributed. Dkt. 22 at 15-16. For this argument, TPS relies on *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008), a case which held that a plaintiff student could not recover because the school district had not been made aware of any specifics about ongoing sexual harassment other than that some "boys were bothering [the plaintiff]."

There are two problems with TPS's attempt to apply *Rost* to this case. First, *Rost* addressed a motion for summary judgment, not a motion to

---

[4] TPS implies that the characterization of the harassing student's actions as "sexual" is a legal conclusion. Dkt. 22 at 15. The Court disagrees. In any event, Ms. Fralix states that the student's harassment of C.J. included references to her "private parts," which at the very least indicates sexual content. Dkt. 2 at 4.

No. 25-cv-633

dismiss. *Id.* at 1118-19. *Rost* therefore applied an entirely different standard than applicable here. Second, the plaintiff in *Rost* did not provide any details of the harassment she experienced other than that the harassers were "bothering" her. *Id.* at 1119. Ms. Fralix, on the other hand, has alleged that she told the unspecified district staff specifics about the boy's actions on multiple occasions. Dkt. 2 at 3-6. Ms. Fralix alleges more in her complaint than the Plaintiff in *Rost* established through discovery.

As discussed in Section III-B, *supra*, Ms. Fralix need only plead enough facts to, assuming those facts are true, permit a factfinder to conclude that she is entitled to relief. She is not required to name every staff member she spoke to, give the time and date of those conversations, and detail precisely what she told them. Ms. Fralix has pleaded sufficient facts to plausibly state that she informed school officials of the harassment, and the Court will not dismiss this claim.[5]

## D

Fourth, TPS argues that even if it had knowledge of the sexual harassment, Ms. Fralix has failed to establish its deliberate indifference to that sexual harassment. Dkt. 22 at 16-18. To allege that TPS was deliberately indifferent, Ms. Fralix must plead enough facts to plausibly allege that TPS's "response to the harassment or lack thereof is clearly unreasonable in light of the

---

[5] TPS argues that Ms. Fralix's pleading that the administrators had "constructive, if not direct" knowledge fails to sufficiently plead that the knowledge was direct, as required by *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Dkt. 22 at 16. But on examination of Ms. Fralix's complaint, the full quote is that "McClure's administration under [TPS's] operations and policies had at a minimum constructive, if not direct, knowledge of targeted sex-based misconduct." Dkt. 2 at 9. Although the drafting of this statement may lead to some confusion, Ms. Fralix has pleaded elsewhere that TPS employees had direct knowledge by virtue of her personal reports. *Id.*

No. 25-cv-633

known circumstances." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).[6]

Ms. Fralix meets this standard. She alleges that the harassment began shortly after C.J.'s enrollment at McClure and that she "notified administrators on multiple occasions, but they took no protective measures." Dkt. 2 at 4. Ms. Fralix then alleges that TPS staff required C.J. to work with the male student. *Id.* When the death threat was discovered, Principal Kesler, Dean Swinford, and Assistant Principal Cates opened an investigation solely into the death threat, ignoring any prior conduct, and failed to report any of the conduct to TPS Title IX or investigatory officials. *Id.* at 5. This investigation found that there was "no power imbalance" and thus no evidence of bullying despite the death threat. *Id.* The administrators then referred the male student to counseling and did not separate him from C.J. or take other remedial action. *Id.*

Presuming all these allegations are true, a factfinder could conclude that TPS's response was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. TPS's decision to require C.J. to work with her alleged harasser could be a "clearly unreasonable" response, as could the failure to provide C.J. with any protective or therapeutic measures. Dkt. 2 at 4; *see Lameda as next friend of S.L. v. Indep. Sch. Dist. No. 29 of Cleveland Cnty.*, No. CIV-21-119-D, 2021 WL 4302773, at *4 (W.D. Okla. Sept. 21, 2021)

---

[6] TPS argues that *Davis* cuts off Ms. Fralix's argument because "peer misconduct experienced by children, even when sexually targeted, commonly reflects students' developmental immaturity and, given that, would frequently be non-actionable when analyzed under Title IX." Dkt. 28 at 5. But this misreads *Davis*'s holding. Ordinary and common "simple acts of teasing and name-calling among school children" are not recoverable. *Davis*, 526 U.S. at 651-52. Repeated sexually directed harassment and death threats are different. Ms. Fralix does not allege that the boy was engaged in playground teasing, such as mocking an overweight child about her size, a child with weak eyesight about the need to wear glasses, or other common insults like the term "scaredy-cat." *Id.* at 652. Rather, she alleges that the boy engaged in a pattern of sexually harassing comments that escalated to a death threat. Dkt. 2. These allegations are more extreme than the examples given in *Davis*.

No. 25-cv-633

(denying a motion to dismiss and holding that holding that "refusing to make any response to [the plaintiff's] requests for assistance and failing to put in place any measures to protect her" the defendant school district's alleged response met the deliberate indifference standard).[7]

Similarly, assuming all these facts are true, a jury could find that TPS's three-week delay in investigating the death threat, its decision to limit the investigation to the death threat and not consider the boy's prior behavior, and its determination that no response beyond counseling would be taken because there was "no power imbalance" between the male student and his target were all clearly unreasonable. Dkt. 2 at 5; *see Mathis v. Wayne Cnty. Bd. of Educ.*, No. 1:09-0034, 2011 WL 3320966, at *7 (M.D. Tenn. Aug. 2, 2011), *aff'd*, 496 F. App'x 513 (6th Cir. 2012) (holding that a school's failure to meaningfully investigate or punish an instance of sexual assault, among other "calloused" reactions to a plaintiff's concerns, could meet the "clearly unreasonable" standard).

Ms. Fralix has alleged sufficient failures on TPS's part to take remedial action and protect C.J. to state a claim for deliberate indifference.

E

Last, TPS argues that Ms. Fralix has not alleged that the boy's sexual harassment of C.J. was "so severe that it caused [C.J.] to lose access to the educational benefits and opportunities provided by the school." Dkt. 22 at 18. The substance of their argument is that the drawing, and only the drawing, led Ms. Fralix to withdraw C.J. from the school, that the drawing on its own not only did not qualify as sexual harassment, and that any deliberate indifference on the part of TPS did not lead to the drawing or to C.J.'s departure from school. *Id.* at 19. TPS argues that because Ms. Fralix has not shown that

---

[7] TPS argues that the death threat should be separated from the prior sexual harassment for analysis of Ms. Fralix's deliberate indifference claims, but as the Court discussed in Section III-A, *supra*, the death threat should be considered in the context of the perpetrator's other behavior.

No. 25-cv-633

the drawing was caused by TPS's inaction, she has failed to show causation. Dkt. 22 at 19-20. But TPS cites no precedent to support the idea that Ms. Fralix must allege "direct" causation of C.J.'s harm.

Ms. Fralix has alleged that TPS failed to make a timely and meaningful response to another student's sexual harassment of C.J., permitting that harassment to escalate to a death threat. Dkt. 2. Even the cases TPS cites squarely support the notion that a school district's failure to respond to allegations of harassment can lead to liability even if the district did not directly cause the harms. In *Davis*, for example, the school district was held responsible under Title IX because it was aware of harassment by a peer and did nothing in response. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633-34 (1999). In *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1243 (10th Cir. 1999), the court allowed Title IX claims to proceed where the defendant school district was aware of "aggressive, sexually inappropriate" conduct resulting in the sexual assault of the plaintiff student by a peer.

Taking Ms. Fralix's well-pleaded facts as true, a jury could find that TPS violated Title IX. The fact that Ms. Fralix limited the harm to C.J. by removing her from school only speaks to the potential damages. Because TPS's arguments for dismissing Ms. Fralix's Title IX claim are unavailing, the Court denies TPS's motion to dismiss the Title IX claim.

## IV

The Court next considers Ms. Fralix's claim that TPS is liable for violating C.J.'s constitutional rights under 42 U.S.C. § 1983. TPS argues that under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), it can only be liable if there is some official policy adopted by the district's board or a pervasive custom which caused a constitutional violation and pursuant harm to the plaintiff, and that policy was "enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). Mere negligence or

No. 25-cv-633

vicarious liability is insufficient to permit liability under *Monell. Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997). On this point, TPS first reiterates its argument that the death threat constituted non-sexual bullying for which C.J. cannot recover; the Court has already addressed and rejected this argument. *See* Section III-A, *supra*.

More convincing is TPS's argument that Ms. Fralix's complaint "fails to identify an official policy or custom" that caused the violation of C.J.'s constitutional rights. Dkt. 22 at 22-24. Ms. Fralix's complaint alleges that TPS maintained policies and customs which resulted in the "denial of equal protection of the law on the basis of sex" to C.J. by "affording site-level officials unguided discretion and routine practices that failed to identify, escalate, or remedy sex-based misconduct" and "implementing intake, investigation, and referral procedures not reasonably calculated to identify sex-based harassment or protect students' equal access to education." Dkt. 2 at 9. Her complaint "cites no particular facts in support of these threadbare recitals of the elements of a cause of action" and "no allegations in the complaint give rise to an inference that [TPS] itself established a deliberate policy or custom that caused [C.J.'s] injuries." *Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015).

At most, Ms. Fralix alleges that Ms. Kesler, Mr. Swinford, and Ms. Cates "concluded there was 'no evidence of bullying' because 'no power imbalance' existed, exercising their authority under their discretion allowed by Board Policy 2119" and referred C.J.'s alleged harasser to counseling as a result. Dkt. 2 at 5. But this allegation is not sufficient to find that Board Policy 2119 *caused* C.J.'s injuries. Without further explanation of how giving school officials discretion to make disciplinary decisions would "almost inevitabl[y]" cause C.J.'s alleged constitutional injuries, the Court cannot find that Ms. Fralix has pleaded sufficient facts to state a § 1983 claim against TPS. *Schneider*, 717 F.3d at 769.

No. 25-cv-633

Even assuming that Mr. Kesler, Mr. Swinford, and Ms. Cates only found that the alleged harasser's conduct did not constitute bullying under Board Policy 2119 because they "apparently perceived that such conduct would be accepted by [TPS] officials," the Court would "need to stack inference upon inference" to conclude that their perception "reflected a custom or practice" of TPS. *Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019). Ms. Fralix has not provided any facts that would allow a jury to conclude that the application of Board Policy 2119 would necessarily lead to a constitutional violation or that TPS maintains other policies, customs, or practices necessary to permit the Court to hold that TPS may be held liable under § 1983. The Court grants TPS's motion to dismiss C.J.'s § 1983 claim.[8]

## V

TPS next argues that Ms. Fralix has not stated a claim for denial of access to courts and procedural due process under § 1983. Dkt. 22 at 26-27. Ms. Fralix's theory is that TPS "channeled reports exclusively through campus police, preventing parents from accessing traditional law-enforcement or judicial protections, including protective orders" and that this course of conduct "compounded" the harms alleged to both C.J. and Ms. Fralix. Dkt. 2 at 11-12. The only case she cites to support her theory is *A.G. v. Fattaleh*, 614 F. Supp. 3d 204 (W.D.N.C. 2022), an out-of-circuit case that does not involve denial of access to courts or denial of procedural due process rights.

In *Christopher v. Harbury*, 536 U.S. 403, 412-14 (2002), the Supreme Court outlined the types of access-to-courts claims recognized by circuits. These include "claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suit at the present time," such as those "challenging filing fees that poor plaintiffs cannot afford to pay," and those

---

[8] Because Ms. Fralix has not alleged the existence of a policy or custom sufficient to permit liability under § 1983, the Court does not reach the question of whether TPS was on notice that those polices or customs were likely to result in constitutional violations or caused C.J.'s harm.

No. 25-cv-633

"specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Ms. Fralix does not allege that there is a current, ongoing action by TPS precluding her from seeking relief in the courts, so only the latter theory may support her claim. And in *Jennings v. City of Stillwater*, 383 F.3d 1199, 1207 (10th Cir. 2004), the Tenth Circuit rejected an argument that a city official's failures to investigate a rape allegation and inadvertent destruction of a rape kit "undermined [the plaintiff's] ability to bring a private tort action against her alleged assailants" meant that the city and its officials "violated her constitutional rights to meaningful and effective access to the courts."[9] Because "the only remedy that could conceivably be awarded" for denial of her access to courts would be "damages for the loss of her civil tort claim against her assailants," her remedy was, in fact, the separate tort claim she had previously chosen to settle, and she could not claim a cause of action. *Id.* at 1209.

Ms. Fralix's complaint does not indicate that her case "cannot now be tried . . . no matter what official action may be in the future." *Christopher*, 536 U.S. at 413. She does not allege there is some destruction of evidence or other reason why any delay on TPS's part in investigating the report or failure to refer it for criminal investigation and prosecution precludes litigation of the issues in a court of law. And even if she did allege those things, she would not be entitled to a remedy not already covered by this civil action. *Jennings*, 383 F.3d at 1209. The Court grants the motion to dismiss the access-to-courts claims.

## VI

TPS next moves to dismiss Ms. Fralix's personal claims *in toto*, arguing that Ms. Fralix failed to allege any constitutional injury to herself independent of any injury she alleges C.J. suffered. Dkt. 22 at 27-28. Ms. Fralix

---

[9] *Jennings* also cast doubt on the viability of "backwards looking claims" for denial of access to courts under Tenth Circuit precedent, though ultimately assumed the legal viability of a backwards-looking denial of access claim in its analysis. 383 F.3d at 1208.

No. 25-cv-633

argues that this is at core a damages issue and inappropriate to consider on a motion to dismiss. Dkt. 25 at 14. Since the Court has already dismissed the § 1983 and access-to-courts claims, the Court only considers whether Ms. Fralix can assert an independent claim under Title IX.

Generally, "[p]arents acting in their individual capacity, rather than as a representative of a minor, generally do not state an actionable [Title IX] claim." *Doe v. Bd. of Trs. of Sublette Cnty. Sch. Dist. No. 9*, No. 23-8001, 2024 WL 1085149, at *3 n.4 (10th Cir. Mar. 13, 2024) (dicta). As this court recently held in *McCoy v. Indep. Sch. Dist. No. 1 of Tulsa County, Oklahoma*, "[c]onsidering the plain language [of Title IX] . . . [p]arents lack statutory standing" to bring Title IX claims independent of their children, because "[p]arents, individually, are outside the zone of interest contemplated by Title IX." No. 24-cv-00263-SH, 2025 WL 300693, at *4 (N.D. Okla. Jan. 24, 2025). In accord with *McCoy*, the Court holds that Ms. Fralix lacks standing to bring an individual Title IX claim and grants TPS's motion to dismiss Ms. Fralix's Title IX claim.

## VII

Last, TPS moves to dismiss Ms. Fralix's requests for declaratory and injunctive relief. Dkt. 22 at 28-31. But "the prayer for relief is no part of the cause of action," and the Court may not dismiss a request for relief on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 901 (10th Cir. 2011); *see also In re Gen. Motors Corp.*, 383 F. Supp. 2d 1340, 1344 (W.D. Okla. 2005) (denying a motion to dismiss a prayer for declaratory and injunctive relief because "the prayer for relief is not part of the claim"). Since "the only issue on a motion [to] dismiss is whether the claim as stated would give the plaintiff a right to any relief, rather than to the particular relief demanded" there is no basis for dismissing Ms. Fralix's requested relief, and the Court denies the motion to do so. *Cassidy v. Millers Cas. Ins. Co. of Texas*, 1 F. Supp. 2d 1200, 1214 (D. Colo. 1998).

No. 25-cv-633

## VIII

The Court now turns to the individual Defendants' motion to dismiss C.J.'s claims against them in their individual capacities. Dkt. 23. Ms. Fralix alleges that the individual Defendants violated C.J.'s rights under the Equal Protection Clause through their alleged deliberate indifference to C.J.'s sexual harassment and subsequent death threats. Dkt. 2. The individual Defendants move to dismiss this claim and, separately, argue that qualified immunity precludes Ms. Fralix's suit. Dkt. 23. The individual Defendants also move to dismiss Ms. Fralix's individual claims and Ms. Fralix's prayers for relief for punitive damages, declaratory judgment, and injunctive relief. *Id.* at 25-28.

Although the Court previously discussed C.J.'s § 1983 claim for deliberate indifference, *see* Section IV, *supra*, the Court dismissed that claim because of the limitations placed on TPS's liability under *Monell*. But that argument does not apply here. Instead, the individual Defendants argue that Ms. Fralix has failed to state a § 1983 claim against them for deliberate indifference and violations of the Equal Protection Clause, and, in the alternative, they are entitled to qualified immunity. Dkt. 23 at 13-23.

Much as TPS, the individual Defendants argue that there was no violation of C.J.'s constitutional rights because Ms. Fralix has not alleged that C.J. suffered from sexual harassment, only non-sexual bullying. But as discussed in Section III-A, *supra*, the death threat shared a nexus with ongoing sexual harassment by another student, and while it itself did not include any sexual content, it should be considered in the context of the earlier sexual harassment. The Court will not dismiss the § 1983 claims on this basis.

More convincing is the individual Defendants' argument that Ms. Fralix has failed to plead that they had the requisite state of mind to be deliberately indifferent to C.J.'s predicament. Dkt. 23 at 15-17. "The state of mind required to establish an equal protection violation is purposeful discrimination." *B.C. v. Indep. Sch. Dist. No. 33 of Creek Cnty., Oklahoma*, No. 24-cv-

No. 25-cv-633

00059-SH, 2024 WL 4829485, at *7 (N.D. Okla. Nov. 19, 2024) (citing *Bird v. W. Valley City*, 832 F.3d 1188, 1208 (10th Cir. 2016)). For any of the individual Defendants to be liable on an Equal Protection Clause theory for "known student-on-student sexual harassment . . . the plaintiff must allege that [each] school administrator's deliberate indifference [to that harassment] was motivated by a discriminatory intent." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 702-03 (4th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

In her response, Ms. Fralix argues that she pleaded that the boy's alleged statements were "sex-based harassment" and so the individual Defendants' states of mind are not at issue. Dkt. 26 at 3-4. But even assuming those statements constituted harassment based on C.J.'s sex, the Court cannot take a student's statements alone and use them to find that school administrators reviewing those statements purposefully discriminated against the target of the harassment. And at no point in Ms. Fralix's complaint does she allege that the individual Defendants acted from a discriminatory intent. Dkt. 2. The Court thus dismisses C.J.'s § 1983 claim for violation of the Equal Protection Clause against Ms. Kesler, Ms. Cates, and Mr. Swinford.[10]

## IX

For the reasons given above, the Court grants TPS's motion to dismiss [Dkt. 22] C.J.'s § 1983 claims for violations of the equal protection clause and denial of access to the courts and Ms. Fralix's individual-capacity claims. The Court denies the motion to dismiss C.J.'s Title IX claim against TPS and the motion to dismiss C.J.'s prayer for declaratory and injunctive relief. The

---

[10] Since the Court holds that Ms. Fralix has not pleaded sufficient allegations to support C.J.'s § 1983 claim, the Court does not address the argument that the individual Defendants are entitled to qualified immunity. The Court also dismisses any personal § 1983 claim Ms. Fralix alleges against the individual Defendants for the same reasons discussed in Section IV, *supra*.

No. 25-cv-633

Court grants the individual Defendants' motion to dismiss [Dkt. 23] all claims against Ms. Kesler, Ms. Cate, and Mr. Swinford.

The Court recognizes that Ms. Fralix has separately filed a motion for leave to amend her complaint. Dkt. 30. But Ms. Fralix filed this motion without the benefit of the Court's decision on the motion to dismiss. The Court notes that her proposed amended complaint includes counts that the Court dismisses in this order, rendering it futile. The Court therefore denies her motion for leave to amend as it applies to her first amended complaint. Dkt. 30-1 at 10-16. The Court grants Ms. Fralix leave to amend her complaint subject to this opinion by July 2, 2026.

DATED this 11th day of June 2026.

JOHN D. RUSSELL
United States District Judge